| | |
|---|---|
| MAURICE ROCHA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| COASTAL CAROLINA ) | |
| NEUROPSYCHIATRIC CRISIS ) | |
| SERVICES, P.A., ) | |
| ) | |
| Defendant. ) | |

On January 4, 2012, Maurice Rocha ("Rocha") filed this employment discrimination action against Coastal Carolina Neuropsychiatric Crisis Services, P.A. ("CCNCS"), Ash Mikhail ("Mikhail"), and Tobi Gilbert ("Gilbert") (collectively "defendants"). See [D.E. 1]. In his complaint, Rocha (who is proceeding pro se) alleged that CCNCS, Mikhail, and Gilbert terminated his employment as a mental health worker with CCNCS in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213, the Rehabilitation Act, 29 U.S.C. §§ 701–796, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII"). On January 23, 2012, Rocha filed an amended complaint alleging that he was terminated because of a disability and due to his national origin ("first amended complaint") [D.E. 6]. On March 5, 2012, defendants filed a motion to dismiss and an answer to Rocha's complaint and first amended complaint, admitting that CCNCS terminated Rocha's employment, but denying unlawful employment discrimination [D.E. 20]. According to CCNCS, it terminated Rocha's employment because he failed to disclose three felony cocaine possession convictions on his employment application.

On June 20, 2012, the court allowed Rocha to amend his complaint for the second time. See [D.E. 31]. In his second amended complaint [D.E. 32], Rocha omits any reference to the Rehabilitation Act, thereby withdrawing any claim related to the Rehabilitation Act, but restates his disparate treatment claim under the ADA and his disparate impact claim under Title VII. Specifically, Rocha contends that (1) CCNCS regarded him as being a drug addict and terminated his employment in violation of the ADA and (2) CCNCS has a policy of not hiring people convicted of crimes, which has a disparate impact on Hispanics in violation of Title VII. On June 20, 2012, the court held that defendants Mikhail and Gilbert could not be individually liable under the ADA or Title VII and dismissed them from the action. See [D.E. 31].

On June 27, 2013, CCNCS moved for summary judgment [D.E. 113] and filed a memorandum [D.E. 114] and evidence [D.E. 115] in support. Essentially, CCNCS contends that it never regarded Rocha as being disabled or being a drug addict and that it has never had a policy of not hiring people convicted of crimes. Rather, CCNCS contends that it terminated Rocha's employment after concluding that Rocha made a material misrepresentation about his criminal history on his employment application. Rocha responded in opposition [D.E. 118, 119, 120] to CCNCS's motion for summary judgment and filed his own cross-motion for summary judgment [D.E. 125]. Thereafter, the parties filed responses, replies, and numerous other motions. As explained below, the court grants CCNCS's motion for summary judgment and denies all other motions.

I.

CCNCS operated an out-patient mental health treatment facility in Jacksonville, North Carolina where it treated patients with mental health disorders and drug addictions. [D.E. 115-1],

2

Gilbert Aff. ¶ 6 ("Gilbert Aff.").[1] CCNCS offered several mental health services in Jacksonville, including a 23-hour observation service, a non-hospital based medical detox service, and a crisis facility. Id. The medical detox service and crisis facility were both licensed pursuant to the Mental Health, Developmental Disabilities, and Substance Abuse Act of 1985. See id. ¶ 7; N.C. Gen. Stat. §§ 122C-1–122C-433. CCNCS's treatment of patients often included the use of controlled substances, narcotics, and other medications. Gilbert Aff. ¶¶ 15–16.

On October 13, 2010, Rocha applied for employment with CCNCS as a mental health worker. Id. ¶¶ 9–14. As part of the application process, Rocha completed an employment application. The employment application contained the following statement and question:

> A RECORD OF CONVICTION DOES NOT NECESSARILY DISQUALIFY YOU FROM EMPLOYMENT CONSIDERATION. Have you ever been CONVICTED of a felony or misdemeanor, other than traffic violations? YES ____ NO ____.
> If YES, list only convictions and dates: _____.

[D.E. 115-1] 8. On his employment application, Rocha wrote that he had never been convicted of a felony or misdemeanor. Id. The employment application also contained the following statement, which Rocha signed, certifying that his employment application was true, correct, and complete:

> IMPORTANT - READ CAREFULLY BEFORE SIGNING
>
> **I certify that the information provided in this Application for Employment is true, correct and complete. If employed, any misstatement or omission of material fact on this application will result in my immediate dismissal.** I authorize all persons, schools, companies, corporations, credit bureaus, government agencies, or any other party to release information concerning my background which may include, but is not limited to, criminal, credit, driver's records, so long as not prohibited by law and the requests are job related.

Id. 9 (emphasis added).

As part of the application process, Dr. Tobi Gilbert, CCNCS's Clinical Director, interviewed

---

[1] CCNCS ceased operations on March 30, 2011. Gilbert Aff. ¶ 32.

Rocha. See Gilbert Aff. ¶ 10. Dr. Gilbert's interview notes indicate that she "liked" Rocha. See [D.E. 115-3] 2. During the interview, Rocha never mentioned his felony convictions, never stated that he was a recovering drug addict, and never asked for any accommodation under the ADA. See [D.E. 115-7], Rocha Dep. 87–88, 102–07 ("Rocha Dep."). After the interview, CCNCS extended a conditional employment offer to Rocha on October 18, 2012. See Gilbert Aff. ¶¶ 10–12. In accordance with its standard employment procedure, CCNCS conditioned Rocha's employment offer upon Rocha submitting to a criminal background check. See id. Upon making the conditional offer of employment to Rocha, CCNCS provided Rocha with a copy of the CCNCS employee handbook ("CCNCS handbook"), which contained CCNCS's employment policies. [D.E. 115-1], Ex. C; Gilbert Aff. ¶ 12. The CCNCS handbook states in relevant part:

Standards and Misconduct Issues

We have established standards and work rules which are designed to provide the orderly and safe conduct of employees while on the practice's property . . . . The list of unacceptable behavior below (which is not all-inclusive) represents the types which may subject an individual to disciplinary action up to and including termination.

- **Misrepresentation in seeking employment.**
- **Dishonesty**, stealing or removal of another employee's property . . . .

[D.E. 115-1] 26 (emphasis added). The CCNCS handbook also states that "[e]mployees are free to leave CCNCS's service at any time and that any employee can be terminated at any time with or without notice and with or without stated cause [or] reason, except [as] prohibited by law." [D.E. 115-1] 15.

Rocha also received a copy of CCNCS's criminal records policy. See [D.E. 115-1], Ex. D; Gilbert Aff. ¶ 12. The CCNCS criminal records policy protects "the safety of people served by CCNCS, and the agency's employees[] and . . . recognize[s] that people in recovery from substance

4

abuse, who may be good candidates for employment, may have committed crimes while using substances. A careful review of candidates' criminal histories will take both [of] these factors into account." Id. The CCNCS criminal records policy sets forth CCNCS's procedure in conducting criminal background checks, and included the following statement: "[a]ll applicants are expected to reflect the information that will be disclosed on the criminal history report. Any deceit, **intentional or unintentional**, may disqualify a candidate from a position for which they are being considered." Id. (emphasis added); Gilbert Aff. ¶ 13.[2]

On October 21, 2010, Rocha completed an authorization/release form. See [D.E. 115-6], Ex. F; [D.E. 115-7], Rocha Dep. 95. The authorization/release form authorized Adams Keegan (a national human resources company that managed human resources for CCNCS) to review Rocha's background, including his criminal background, and permitted Adams Keegan to provide CCNCS an investigative consumer report concerning Rocha for employment purposes. See [D.E. 115-6], Ex. F; Gilbert Aff. ¶¶ 10–11. Rocha acknowledged in the authorization/release form that his criminal background would be checked. See [D.E. 115-6], Ex. F.

CCNCS conducted criminal history record checks of all applicants applying for positions that did not require an occupational license. Gilbert Aff. ¶ 11. Rocha's duties as a mental health worker would place him in close proximity to patients to whom CCNCS dispensed controlled substances, and CCNCS had to keep a record of its patients who took controlled substances. See id. ¶¶ 14–20. CCNCS conditioned Rocha's offer of employment upon CCNCS receiving satisfactory results following Adams Keegan's comprehensive review of Rocha's background, including his criminal

---

[2] Additionally, willfully furnishing false information on an employment application that is the basis for a criminal history record check to an entity such as CCNCS, which is licensed pursuant to N.C. Gen. Stat. §§ 122C-1 et seq., is a misdemeanor in North Carolina. See N.C. Gen. Stat. § 122C-80(f).

5

history. Id. ¶¶ 10–12. Given that Rocha did not disclose any criminal history on his employment application, CCNCS expected to receive a background check reflecting no criminal history. See id. ¶¶ 10–13, 20–25.

Before CCNCS received and reviewed the results of Rocha's criminal history report from Adams Keegan, Rocha asked to meet with Dr. Gilbert. See Gilbert Aff. ¶ 27; [D.E. 115-7], Rocha Dep. 101–07, 135–37. Before asking for the meeting, Rocha knew that he had failed to reveal any criminal convictions on his employment application. See Rocha Dep. 106. On October 22, 2010, Dr. Gilbert met with Rocha. Rocha told Dr. Gilbert that when he was young he had a drug conviction, which he had failed to disclose on his employment application. See Gilbert Aff. ¶ 27; Rocha Dep. 101–07, 135–37.[3] Moreover, during the meeting, Rocha did not disclose to Dr. Gilbert that he, in fact, had three felony convictions for possessing drugs, state that he was a former or current drug addict, or state that he had ever sought treatment for drug addiction. See Gilbert Aff. ¶ 31; Rocha Dep. 36–37, 101–07.

Based on the material discrepancy between Rocha's employment application and Rocha's criminal history, Dr. Gilbert concluded that Rocha made a material misstatement on his employment application, which subjected him to immediate dismissal. See Gilbert Aff. ¶¶ 14–30; see [D.E. 115-9] 2–4. Accordingly, on October 22, 2010, CCNCS terminated Rocha's employment. See Gilbert Aff. ¶ 30.

II.

The court reviews CCNCS's motion for summary judgment under Rule 56 of the Federal

---

[3] In fact, in 1990 and 1991, Rocha was convicted in Florida of three felonies related to possessing illegal drugs. See Rocha Dep. 30–36; [D.E. 115-9] 2–4. The criminal records concerning the convictions are in the name "Maurice Rourk." See [D.E. 115-9] 2–4. Rocha changed his last name in 2005 from Rourk to Rocha. See Rocha Dep. 14.

6

Rules of Civil Procedure. Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Nor will a "mere . . . scintilla of evidence in support of the [nonmoving party's] position . . . be []sufficient; there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252. In evaluating affidavits submitted in support of or in opposition to a motion for summary judgment, the court may reject inadmissible evidence (such as hearsay) described in such affidavits. See Fed. R. Civ. P. 56(c); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996). "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil

Procedure." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011).

A.

Rocha has no direct evidence of illegal discrimination under the ADA; therefore, he relies on the burden-shifting framework described in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Raytheon Co. v. Hernandez, 540 U.S. 44, 49 n.3 (2003). To survive summary judgment on his ADA claim, Rocha must "produce evidence sufficient to demonstrate that (1) he was a qualified individual with a disability; (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raise a reasonable inference of unlawful discrimination." Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 150 (4th Cir. 2012) (quotations omitted); Rohan v. Networks Presentations LLC, 375 F.3d 266, 272 n.9 (4th Cir. 2004); Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001); Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001).[4] CCNCS concedes that it terminated Rocha's employment, but argues that Rocha has failed to raise a genuine issue of material fact concerning the other three elements of his prima facie case.

Rocha first must produce evidence that he was a "qualified individual with a disability" under the ADA. 42 U.S.C. §12112(a). The ADA defines 'disability' as "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. §12102(1); 29 C.F.R. § 1630.2(g)(l). Section 12102(3), in turn, states:

For purposes of paragraph (1)(C):

---

[4] Although this order includes citations to cases applying the ADA before the ADA Amendment Act of 2008 ("ADAAA"), the court has applied the ADAAA to Rocha's ADA claim. See, e.g., 42 U.S.C. § 12102(3); 29 C.F.R. § 1630.2(l)(1); Olsen v. Capital Region Med. Ctr., 713 F.3d 1149, 1154 (8th Cir. 2013); Young v. United Parcel Serv., Inc., 707 F.3d 437, 443 n.7 (4th Cir. 2013).

8

>> (A) An individual meets the requirements of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.
>> (B) Paragraph 1(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 U.S.C. § 12102(3). Under section 12102(3), which Congress added in the ADAAA, an individual bringing a "regarded as" claim need only show that an employer subjected him to an action that the ADA prohibits because of an actual or perceived impairment regardless of whether the employer perceived the impairment to limit the individual in a major life activity. See 42 U.S.C. § 12102(3); 29 C.F.R. § 1630.2(l)(1); Olsen, 713 F.3d at 1154; Gecewicz v. Henry Ford Macomb Hosp. Corp., 683 F.3d 316, 321–23 (6th Cir. 2012); Harris v. Reston Hosp. Ctr., LLC, No. 1:10-cv-1431, 2012 WL 1080990, at *3–5 (E.D. Va. Mar. 26, 2012) (unpublished). Thus, a "regarded as" claim under the ADAAA is much easier to prove than a "regarded as" claim before the ADAAA. Cf. Young, 707 F.3d at 443–44 (analyzing a pre-ADAAA "regarded as" claim); Rohan, 375 F.3d at 277–78 (same); Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 471 n.5 (4th Cir. 2002) (same); Davis v. Univ. of N.C., 263 F.3d 95, 99–100 (4th Cir. 2001) (same); Rhoads, 257 F.3d at 390–91 (same); Haulbrook, 252 F.3d at 703 (same).

Rocha testified that when CCNCS employed him from October 18 through October 22, he was not disabled and did not need a reasonable accommodation. See Rocha Dep. 87–89, 127, 138. Moreover, Rocha does not claim that he has a record of impairment or that a physician has ever diagnosed him with an impairment, such as drug addiction. Id. 89, 91; cf. A Helping Hand, LLC v. Balt. Cnty., 515 F.3d 356, 367 (4th Cir. 2008) (noting that drug addiction constitutes an impairment under the ADA, but that merely having an impairment does not make one disabled under the ADA).

9

Rather, Rocha contends that CCNCS regarded him as having the impairment of drug addiction and fired him because it mistakenly believed that he was a drug addict. In support, Rocha testified that he attended what he described as out-patient AA meetings for 18 months during 1991 and 1992. See Rocha Dep. 90–92. According to Rocha, he attended the meetings pursuant to a Florida court order arising from his felony drug convictions. Id. Rocha then argues that when he disclosed one of his drug convictions to Dr. Gilbert during their meeting on October 22, 2010, Dr. Gilbert mistakenly regarded him as having an impairment, to wit, drug addiction, and fired him. As such, according to Rocha, he is a "qualified individual with a disability" under the ADA.

Rocha's argument fails. Simply because Rocha told Dr. Gilbert on October 22, 2010 that he had some problems with drugs when he was young and that his criminal background check would reveal a criminal conviction for drugs when he was young, see Rocha Dep. 102–07; Gilbert Aff. ¶ 27, does not mean that CCNCS (via Dr. Gilbert or anyone else) regarded Rocha as being a drug addict in 2010. There is no logical nexus between Rocha's 1991 drug-possession conviction that he revealed to CCNCS in October 2010 and CCNCS regarding Rocha as having an impairment, to wit, drug addiction, in October 2010. See, e.g., Pernice v. City of Chicago, 237 F.3d 783, 786–87 (7th Cir. 2001); Harris, 2012 WL 1080990, at *5–6. Notably, when Rocha revealed his 1991 drug-possession conviction to Dr. Gilbert, he said nothing about receiving treatment for drug addiction in 1991 or at any other time. See Rocha Dep. 87–92, 101–07. Thus, Rocha does not have a "disability" under the ADA, and there is no genuine issue of material fact as to the first element of Rocha's prima facie case. See Harris, 2012 WL 1080990, at *5–6.

Alternatively, Rocha has failed to create a genuine issue of material fact about whether he was fulfilling CCNCS's legitimate expectations when CCNCS terminated his employment. On October 22, 2010, Rocha told Dr. Gilbert that he had misrepresented his criminal history on his

employment application. See Rocha Dep. 101–07; Gilbert Aff. ¶ 27. Rocha volunteered this information to Dr. Gilbert after signing an authorization/release form for Adams Keegan to conduct a criminal background check and was aware that the background check would reveal his misrepresentation. See Rocha Dep. 95, 106. CCNCS's employment policy, which Rocha received, states that dishonesty or misrepresentations made while seeking employment would subject an employee to discipline, up to and including termination. See Gilbert Aff. ¶ 12. The employment application also stated that a misstatement of a material fact would result in immediate dismissal. [D.E. 115-1] 9. By misstating a material fact on his employment application concerning his criminal history, Rocha failed to meet CCNCS's legitimate expectations.

In opposition to this conclusion, Rocha argues that his 1990 and 1991 drug convictions are related to his history of drug addiction. An employer, however, does not violate the ADA when it "discharges an individual based upon the employee's misconduct, even if the misconduct is related to a disability." Jones v. Am. Postal Workers Union, 192 F.3d 417, 429 (4th Cir. 1999); Pence v. Tenneco Auto. Operating Co., 169 F. App'x 808, 810–12 (4th Cir. 2006) (per curiam) (unpublished); see also Pernice, 237 F.3d at 785; Williams v. Widnall, 79 F.3d 1003, 1007 (10th Cir. 1996); cf. 42 U.S.C. 12114(c)(4) (ADA allows an employer to "hold an employee who engages in the illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee."). Thus, even if Rocha were able to prove that he is an individual with a disability, which he cannot, he is not excused from complying with CCNCS's employment policies that require honest answers to questions about an employee's criminal history. Indeed, and quite understandably, Rocha's misrepresentation was especially troubling to CCNCS given his proximity to controlled substances

11

at CCNCS, and CCNCS's need to report whether the patients under Rocha's care had taken their prescription drugs. See Gilbert Aff. ¶¶ 15–18, 21–22. Accordingly, Rocha was not meeting CCNCS's legitimate expectations when CCNCS terminated his employment.

Alternatively, Rocha has failed to create a genuine issue of material fact as to whether his employment termination raises a reasonable inference of disability discrimination. Nothing in the record suggests that CCNCS terminated Rocha's employment because of his alleged substance abuse in 1990 and 1991. Rocha's argument that CCNCS must have known in 2010 that he was a former substance abuser simply because he disclosed a 1991 drug conviction is too tenuous to create a genuine issue of material fact. See Gecewicz, 683 F.3d at 322–23; Davis, 263 F.3d at 99–100; Pernice, 237 F.3d at 786–87; Jones, 192 F.3d at 429; Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995); Harris, 2012 WL 1080990, at *5. Indeed, even Rocha admits that not every person convicted of illegally possessing drugs is a drug addict. See Rocha Dep. 143.

Alternatively, even if Rocha did establish a prima facie case, CCNCS would then need to provide a legitimate, non-discriminatory reason for terminating Rocha's employment. An employer's burden of providing a legitimate, non-discriminatory reason is one of production, not persuasion. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993); see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). An employer must present its legitimate, non-discriminatory reason "with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255–56 (1981). For example, an employer's honest belief that another candidate is better qualified due to that employee's job performance and experience is a legitimate, non-discriminatory reason for choosing to hire one candidate over another candidate. Evans, 80 F.3d at 960. Likewise, an employer's honest belief that an applicant made a material misrepresentation on his employment application is a legitimate, non-

12

discriminatory reason for taking an adverse employment action. See, e.g., Luster v. Ill. Dep't of Corr., 652 F.3d 726, 732 (7th Cir. 2011); Gilbert v. Des Moines Area Cmty. College, 495 F.3d 906, 918 (8th Cir. 2007); Carter v. Tennant Co., 383 F.3d 673, 678 (7th Cir. 2004); Conner v. Schnuck Mkts., Inc., 121 F.3d 1390, 1396 (10th Cir. 1997); Dwyer v. Smith, 867 F.2d 184, 190 (4th Cir. 1989).

CCNCS contends that it terminated Rocha's employment because Dr. Gilbert believed that Rocha made a material misrepresentation about his criminal history in his employment application. This reason constitutes a legitimate, non-discriminatory reason for discharging Rocha. Accordingly, CCNCS has met its burden of production and the burden shifts back to Rocha to show that there is a genuine issue of material fact about whether CCNCS's justification is pretextual.

A plaintiff can demonstrate pretext by showing that the alleged non-discriminatory "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [disability] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted). In conducting this analysis, the court does not sit to decide whether the employer in fact discriminated against the plaintiff on the basis of disability. See, e.g., Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279–80 (4th Cir. 2000). Rather, the issue is whether plaintiff has raised a genuine issue of material fact as to pretext under Reeves and its Fourth Circuit progeny.

Here, Rocha presents no admissible evidence suggesting that CCNCS's stated reason for discharging him was pretextual. For example, he concedes that he has no evidence that CCNCS ever failed to terminate an employee who misrepresented his criminal history on his employment application. See Rocha Dep. 122. Likewise, CCNCS has consistently given the same reason to explain Rocha's discharge. Nonetheless, Rocha argues that he made a "clerical error" in failing to

13

disclose his three felony convictions for possessing drugs on his employment application and that Dr. Gilbert did not give him time to explain himself once he admitted to one of his felony convictions. See id. 101–07.

Rocha's state of mind is irrelevant. The focus is on whether the employer's decisionmaker honestly believed that Rocha violated the employer's employment policies and that the violation warranted termination. See, e.g., DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998). Moreover, this court does not sit as a super-personnel board to decide whether CCNCS should have excused Rocha's material misrepresentation. See id. Here, no rational jury could find that CCNCS (through Dr. Gilbert) was being dishonest when she explained that CCNCS terminated Rocha's employment for material misrepresentation on his employment application and that the alleged dishonesty was designed to mask disability discrimination. Thus, the court grants summary judgment to CCNCS on Rocha's ADA claim.

B.

As for Rocha's Title VII claim, Rocha does not allege that CCNCS intentionally discriminated against him based on his national origin. Rather, he proceeds under a disparate impact theory. Specifically, Rocha alleges that CCNCS refused to employ anyone with a criminal conviction and that this alleged policy disparately impacts Hispanics and thereby violates Title VII. See [D.E. 32] ¶ 9; Rocha Dep. 118, 123.

In order to state a disparate impact claim under Title VII, Rocha first must identify "a particular employment practice that causes a disparate impact on the basis of . . . national origin . . . ." 42 U.S.C. § 2000e-2(k)(1)(A)(i). Rocha contends that the "particular employment practice" is a policy of refusing to employ anyone with a criminal conviction. Dr. Gilbert, however, stated in her affidavit that "CCNCS does not exclude all individuals with a criminal history from

employment" and "employs at least one individual with a known criminal conviction." Gilbert Aff. ¶¶ 28–29. Moreover, Rocha has presented no admissible evidence (direct, expert, or statistical) that CCNCS used the alleged "particular employment practice" of not employing any person with a criminal conviction. In fact, he concedes that no one at CCNCS ever told him that CCNCS used such a policy and that he has no evidence of such a policy. See Rocha Dep. 152–53. Because the evidence shows that CCNCS did not use the alleged "particular employment practice," Rocha's disparate impact claim fails. See 42 U.S.C. § 2000e-2(k)(1)(A)(i); Lewis v. City of Chicago, 130 S. Ct. 2191, 2197 (2010); Ricci v. DeStafano, 557 U.S. 557, 578 (2009); Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657 (1989), abrogated on other grounds, 42 U.S.C. § 2000e-2(k); Mills v. N.C. Dep't of Transp., 283 F. App'x 169, 169–70 (4th Cir. 2008) (per curiam) (unpublished); Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 265 (4th Cir. 2005); McNairn v. Sullivan, 929 F.2d 974, 979 (4th Cir. 1991); Walls v. City of Petersburg, 895 F.2d 188, 191 (4th Cir. 1990); see also Holder v. City of Raleigh, 867 F.2d 823, 826 (4th Cir 1989); Wright v. Nat'l Archives & Records Serv., 609 F.2d 702, 711–13 (4th Cir. 1979) (en banc). Accordingly, the court grants summary judgment to CCNCS on Rocha's Title VII claim.

III.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 113]. The court DENIES the other motions [D.E. 89, 93, 96, 98, 100, 108, 117, 123, 125, 130, 132, 137]. The clerk shall close the case.

SO ORDERED. This 16 day of October 2013.

JAMES C. DEVER III
Chief United States District Judge

15